**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CASE NO:**

| | | |
|---|---|---|
| **Rosalia Serrano Diaz, Perla Z.** | ) | |
| **Valenzuela, Jaime Bernal Delgado,** | ) | |
| **on behalf of themselves and all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| **Quality Crab Co., Inc. and William E.** | ) | |
| **Barclift,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PRELIMINARY STATEMENT

1.       Plaintiffs Rosalia Serrano Diaz, Perla Z. Valenzuela, and Jaime Bernal Delgado are former employees of Defendants who were recruited in Mexico to work in Defendants' North Carolina seafood processing plant.  Plaintiffs and their coworkers worked for Defendants in North Carolina on temporary migrant guestworker visas.  They were subjected to numerous federal and state labor law violations.

2.       The named Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA") on behalf of themselves and all other similarly situated employees against their former employers.  Defendant is a seafood processing company located in Elizabeth City, Pasquotank County, North Carolina and its Corporate President.  Named Plaintiffs seek to represent two classes and a subclass of other employees of the Defendants who suffered violations of federal and state wage and hour laws.

Named Plaintiffs Serrano Diaz and Valenzuela also seek to represent a subclass of employees of the Defendants who suffered violations of state wage and hour laws.

3.      Plaintiff Bernal Delgado also brings individual claims under the NCWHA against Defendants.

4.      Based on Plaintiffs' claims under 29 U.S.C. § 206 of the Fair Labor Standards Act and N.C.G.S. §§ 95-25.6 and 95-25.22, they seek payment of back wages and an equal amount of liquidated damages, attorneys' fees, and costs under 29 U.S.C. § 216(b) and N.C.G.S. §§ 95-25.22(a), (a1), and (d).

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337 (interstate commerce), 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (Fair Labor Standards Act), and the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8.       The Plaintiffs and the members of the classes they seek to represent came to North Carolina from their permanent place of residence in Mexico to work for Quality Crab Company, Inc. (hereinafter "Quality Crab") as seafood processors pursuant to a temporary guestworker visa program authorized under the Immigration and Nationality Act, known as the "H-2B program."  8 U.S.C. § 1101(a)(15)(H)(ii)(b).

2

9. The named Plaintiffs' first language is Spanish and they speak little or no English. Upon information and belief, members of the proposed Plaintiff classes also speak Spanish as their first language and speak little or no English.

10. The named Plaintiffs and members of the classes they seek to represent were employees of Defendants within the meaning of the FLSA and the NCWHA during any workweek in which they performed work for Defendants.

11. The named Plaintiffs and the members of the classes they seek to represent were employed by Defendants when they were engaged in the production of goods for interstate commerce or as part of an enterprise of Defendants that was engaged in interstate commerce.

12. At all times relevant to this action, Defendant Quality Crab was and is a domestic seafood processing corporation organized under the laws of the state of North Carolina and was and is engaged in the production of goods for interstate commerce, or was an enterprise engaged in interstate commerce, with its principal place of business in Elizabeth City, Pasquotank County, North Carolina and doing business within the state of North Carolina.

13. The registered agent for service of process upon Quality Crab is William E. Barclift, 177 Knobbs Creek Drive, Elizabeth City NC 27909.

14. At all times relevant to this Complaint, Defendant Quality Crab was an employer of the named Plaintiffs and was and/or is an employer of the members of the classes Plaintiffs seek to represent within the meaning of the FLSA and the NCWHA.

15. At all times relevant to this action, Defendant William Barclift (hereinafter "Barclift") was and is the president of Quality Crab.

3

16.     At all times relevant to this Complaint, Defendant Barclift exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed Plaintiff classes defined in ¶¶ 74, 78, 79, 81 and 82.

## FACTUAL ALLEGATIONS

**A.     Defendants' H-2B Visa Applications.**

17.     In order to participate in the H-2B program, Defendants were obliged to apply for and obtain an Alien Employment Certification pursuant to Title 20, Code of Federal Regulations, Part 621 ("clearance order") from the U.S. Department of Labor and North Carolina Employment Security Commission. (New regulations governing the H-2B program took effect in January 2009. 20 CFR part 655.  All clearance orders submitted by Defendants prior to January 2009 were governed by the old regulations.)

18.     Defendants were certified by the U. S. Department of Labor to employ fifty three (53) H-2B workers as shellfish shuckers from October 1, 2007 through May 31, 2008.

19.     Defendants were certified by the U. S. Department of Labor to employ ninety three (93) H-2B workers as crab meat processors from March 1, 2008 through December 31, 2008.

20.     Defendants were certified by the U. S. Department of Labor to employ seventy five (75) H-2B workers as shellfish shuckers from August 1, 2008 through May 31, 2009.   Upon information and belief, named Plaintiff Bernal Delgado was employed by Defendants pursuant to this clearance order.

21.     Defendants were certified by the U.S. Department of Labor to employ forty three (43) H-2B workers as meat cutters from February 2, 2009 through November 30, 2009.  Upon

4

information and belief, all of the named Plaintiffs were employed by Defendants pursuant to this clearance order.

22.     Defendants were certified by the U.S. Department of Labor to employ eighty two (82) H-2B workers as meat trimmers from October 1, 2009 through July 31, 2010. Upon information and belief, Defendants have been certified by the U.S. Department of Labor to employ additional H-2B workers in 2010.

23.     Members of the proposed Plaintiff classes worked for Defendants as H-2B guestworkers pursuant to some or all of the above H-2B clearance orders.

24.     In each clearance order Defendants submitted to the U.S. Department of Labor, they were required to certify and declare under penalty of perjury that ". . . the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work." Defendants were also required to certify and declare under penalty of perjury that the job opportunity's terms, conditions and occupational environment were not contrary to Federal, State or local law. ETA Form 750, parts 23 and 24 (Applications submitted beginning in 2009 use new ETA Form 9142).

25.     The prevailing wage for the October 1, 2007 through May 31, 2008 clearance order was $7.26 per hour. The prevailing wage for the March 1, 2008 through December 31, 2008 clearance order was $6.79 per hour. The prevailing wage for the August 1, 2008 through May 31, 2009 clearance order was $7.63 per hour. The prevailing wage for the February 2, 2009 through November 30, 2009 clearance order was $7.38 per hour. The prevailing wage for the October 1, 2009 through July 31, 2010 clearance order was $7.38 per hour.

5

26. The federal minimum wage was $5.15 from April 30, 2007 to July 23, 2007; $5.85 from July 24, 2007 through July 23, 2008; $6.55 per hour from July 24, 2008 through July 23, 2009; $7.25 per hour from July 24, 2009 until the present.

**B.  Costs Related to the H-2B Visa Program for Plaintiffs and Plaintiff Class Members.**

27. In 2008 and 2009, Defendant William Barclift requested that Plaintiff Jaime Bernal Delgado recruit a group of workers from Sinaloa, Mexico to come to North Carolina to work for Defendants. Plaintiffs Serrano Diaz and Valenzuela were among those workers who traveled with Plaintiff Bernal Delgado to North Carolina to work for Defendants in 2009.

28. Upon information and belief, Defendants also recruited and hired other H-2B workers from various locations in Mexico in 2007, 2008, 2009, and 2010.

29. In order to come to the United States to work for Defendants under the H-2B program, the named Plaintiffs and all proposed FLSA and NCWHA class members were required to purchase, at their own expense, a "Derecho de Visa," a visa reciprocity fee paid at the Mexican bank "Banamex."

30. Prior to November 2007, the cost of the visa reciprocity fee was $45. Beginning in November 2007 and continuing until the present, the visa reciprocity fee has been $100. The named Plaintiffs each paid the $100 reciprocity fee in 2008 and 2009. The putative class members each paid $45 and/or $100 depending on the year(s) in which they worked for Defendants pursuant to an H-2B visa.

31. The H-2B visas which the named Plaintiffs and proposed class members obtained authorized them to work for Quality Crab only. The H-2B visas did not authorize them to work for any other employer(s).

32.     In order to obtain an H-2B visa, the named Plaintiffs and all proposed class members were also required to pay an additional visa fee to the U.S. Consulate. The visa fee paid by the named Plaintiffs and others similarly situated was approximately $100. The named Plaintiffs and all proposed class members were required to travel from their home villages to the U.S. Consulate in order to obtain their visas.

33.     In 2008 and 2009, Plaintiff Bernal Delgado and the H-2B workers who traveled with him from Sinaloa, Mexico to work for Defendants were required to travel to the U.S. Consulate in Hermosillo, Mexico and stay overnight while they waited for the issuance of their visas following their interviews with the U.S. Consulate. Plaintiff Bernal Delgado and those workers who traveled with him (including named Plaintiffs Serrano Diaz and Valenzuela in 2009) each paid the costs of staying in a hotel in Hermosillo in order to obtain their visas.

34.     Following the issuance of their H-2B visas, the named Plaintiffs and all proposed class members were required to travel from Mexico to Defendants' operation in North Carolina. The named Plaintiffs and the others who traveled with them each paid the cost of transportation by bus from their home villages to the Consulate in Hermosillo, and from Hermosillo to Phoenix. Defendants paid the upfront cost of airline tickets from Phoenix to North Carolina for the named Plaintiffs and those who traveled with them.

35.     Upon information and belief, class members who traveled from other parts of Mexico each paid the cost of transportation by bus from their home villages to another location in Mexico where they boarded an airplane to travel to the United States. Upon information and belief, Defendants paid the upfront cost of the airplane tickets for those class members.

36.     The named Plaintiffs and proposed class members were required to pay a $6.00 fee to U.S. Customs and Border Protection upon crossing the U.S.-Mexico border ("border crossing fee"). This fee was for the issuance of USCIS form I-94, which is required to enter the U.S.

37.     The named Plaintiffs and all members of the proposed Plaintiff classes incurred the costs of an H-2B visa, transportation from their home villages to the U.S. Consulate, a border crossing fee, and transportation to the United States.

38.     In 2008, Defendant Barclift wired money to Plaintiff Bernal Delgado in Mexico, which Plaintiff Bernal Delgado then provided to the members of the Plaintiff class who traveled with him to use to pay for some of the costs associated with obtaining the H-2B visas and/or transportation of workers from their home villages to Phoenix and border crossing fees.  Upon information and belief, Defendant Barclift also wired money to members of the proposed Plaintiff classes who traveled from other locations in Mexico in 2008 to pay for some of the costs associated with obtaining the H-2B visas, transportation, and/or border crossing fees.

39.     In 2009, the named Plaintiffs and those workers who traveled with them paid the entire cost of obtaining their H-2B visas, transportation to Phoenix, and border crossing fees themselves.  Upon information and belief, in 2007 and 2010, class members paid the entire cost of obtaining their H-2B visas, local transportation, and border crossing fees themselves.

40.     The costs incurred by named the named Plaintiffs brought their first week's pay below the minimum wage in at least some of the years in which the named Plaintiffs and members of the proposed classes worked for Defendants.  Upon information and belief, the costs incurred by named the members of the proposed classes as described in ¶¶ 29-39 brought their first week's pay below the minimum wage in at least some of the years in which the members of the proposed classes worked for Defendants.

8

41.    The costs incurred by the Plaintiffs brought their first week's pay below the promised wage.  Upon information and belief, the costs incurred by the members of the proposed classes as described in ¶¶ 29-39 brought their first week's pay below the promised wage.

42.    Defendants made deductions from the paychecks of the named Plaintiffs in order to pay for the transportation described in ¶ 34.  Upon information and belief, Defendant also made deductions from the paychecks of the members of the proposed Plaintiff classes for transportation costs.

43.    At times, these deductions brought the wages of Plaintiffs Serrano Diaz and Valenzuela below the minimum wage.  Upon information and belief, at times, these deductions brought the wages of members of the proposed FLSA Subclass as defined in ¶ 78 below the minimum wage.

44.    At times, these deductions brought the wages of Plaintiffs below the promised wage. At times, these deductions brought the wages of members of the proposed NCWHA Deductions Subclass as defined in ¶ 81 below the promised wage.

45.    Defendants did not obtain written authorization from the named Plaintiffs or members of the proposed Plaintiff classes for the deductions described in ¶¶ 42-43.

46.     The expenses described in ¶¶ 29-39 are an incident of and necessary to Defendants' employment of the named Plaintiffs and each member of the proposed classes and were incurred primarily for the benefit or convenience of Defendants, within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

## C.  Defendants' Pay Practices

47.  Plaintiffs Serrano Diaz and Valenzuela worked for Defendant removing crab meat from crab shells and performing other tasks associated with this work.  Plaintiff Bernal Delgado worked weighing, packing, and pasteurizing crab meat and driving the company van.

48.  The named Plaintiffs and all members of the NCWHA Class and Subclasses defined in ¶¶ 79, 82 and 82 they seek to represent had an express, constructive, or implied agreement that Defendants would pay them wages at the rate required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the named Plaintiffs and proposed class and subclass members performed compensable work under the FLSA and/or the NCWHA for Defendants.

49.  At times, Defendants compensated named Plaintiff Serrano Diaz and members of the NCWHA Subclass for seafood processing work on a piece-rate basis per pound of meat removed.  Defendants' paystubs do not include the number of hours worked by Plaintiff Serrano Diaz and members of the proposed NCWHA Pay Rate Subclass for the time they spent doing work that was compensated on a piece-rate basis.

50.  At times, Defendants compensated the Plaintiffs Serrano Diaz and Valenzuela and members of the proposed NCWHA Pay Rate Subclass on an hourly basis.  In 2009, Defendants calculated the pay for Plaintiffs Serrano Diaz and Valenzuela at the rate of $7.25 per hour, though the promised wage rate promised on the clearance order under which they were employed was $7.38 per hour.  Upon information and belief, at times Defendants compensated members of the proposed NCWHA Pay Rate Subclass on an hourly basis at a rate which was less than the promised wage rate for the work they were performing.

51.     Because of Defendants' pay practices as described in ¶¶ 49-50, at times Plaintiffs Serrano Diaz and Valenzuela and members of the proposed NCWHA Pay Rate Subclass did not earn the promised wage during some workweeks.

**D.     Housing**

52.     Defendants housed the named Plaintiffs and members of the proposed NCWHA Deductions Subclass on Pitts Chapel Road in Elizabeth City.  There were rats and cockroaches throughout the housing.  There was no functional heat at the housing, and there were fewer functional stove burners than are required by the North Carolina Migrant Housing Act.

53.     The housing conditions described in ¶ 52 were in violation of state and/or federal standards.

54.     Defendants charged the Plaintiffs and members of the proposed NCWHA Deductions Subclass rent.  In 2008 and 2009, Defendants charged Plaintiffs and members of the proposed NCWHA Deductions Subclass thirty dollars ($30) per week for rent.  Defendants paid the employees in cash and then required them to immediately turn over the rent payment.

55.     Upon information and belief, the amount of the rent payments for this housing exceeded the actual or reasonable cost to defendants for furnishing the housing to Plaintiffs and the members of the proposed NCWHA Deductions Subclass and such charge included a profit to Defendants.

56.     Defendants did not pay Plaintiffs and the members of the  proposed NCWHA Deductions Subclass their wages "free and clear" because they required that Plaintiffs and the members of the Subclass to "kick back" part of their wages for the benefit of the Defendants to pay for rent.

57.     At times, the rent charged by Defendants brought the wages of Plaintiffs Serrano Diaz and Valenzuela below the minimum wage. At times, the rent charged by Defendants brought the wages members of the proposed NCWHA Subclass below the minimum wage.

58.     At times, the rent charged by Defendants brought the wages of Plaintiffs and members of the proposed Plaintiff classes below the promised wage.

**E.     Required Equipment**

59.     Defendants required Plaintiffs and members of the proposed NCWHA Deductions Subclass to wear aprons and rubber boots.

60.     Plaintiffs and members of the proposed NCWHA Deductions Subclass were required to use knives as part of their work with Defendants.

61.     Defendants deducted the cost of aprons, boots, and knives from the paychecks of the Plaintiffs and the members of the proposed NCWHA Deductions Subclass. These items were primarily for the benefit of the Defendants.

62.     Plaintiffs and members of the proposed NCWHA Deductions Subclass did not sign written authorizations allowing Defendants to deduct these costs from their wages.

63.     At times, deductions for each of these items brought the wages of Plaintiffs Serrano Diaz and Valenzuela below the minimum wage. Upon information and belief, at times, deductions for each of these items brought the wages of members of the proposed NCWHA Deductions Subclass below the minimum wage.

64.     At times, deductions for each of these items brought the wages of Plaintiffs Serrano Diaz and Valenzuela below the promised wage. Upon information and belief, at times, deductions for each of these items brought the wages of members of the proposed NCWHA

12

Deductions Subclass below the promised wage.

**F.     Driving Time (Plaintiff Bernal Delgado)**

65.     The wage rate which Defendants promised to pay Plaintiff Bernal Delgado for driving time was ten dollars per hour.  The wage rate which Defendants promised to pay Plaintiff Bernal Delgado for work in the seafood processing plant was nine dollars per hour.

66.     In addition to working at Defendants' seafood processing plant, Plaintiff Bernal Delgado's job duties included driving Defendants' employees to and from work in a company van, driving them to doctor's appointments, and taking them to and from the grocery store and other stores.  Plaintiff Bernal Delgado drove a company van when performing these job duties.

67.     Plaintiff Bernal Delgado was required to transport two or three separate groups of workers between the company housing and the seafood plant at the beginning and end of each workday.  The combined time spent loading, driving, and unloading was up to one hour per trip. Defendants did not maintain records of the actual time Plaintiff Bernal Delgado spent driving.

68.     From October 2008 through May 2009, Defendants did not compensate Plaintiff Bernal Delgado for all of the actual hours he worked as a driver.  From September through November 2009, Defendants did not compensate Plaintiff Bernal Delgado at all for the time he spent performing driving work for them.

69.     Upon information and belief, when Plaintiff Bernal Delgado drove workers to medical appointments during the workday, he was not compensated for any of this time.

70.     As a result of Defendants' failure to pay Plaintiff Bernal Delgado for all of his driving time, Defendants did not pay Plaintiff Bernal Delgado at the minimum wage rate for all of his hours worked.

71.     As a result of Defendants' failure to pay Plaintiff Bernal Delgado for all of his driving time, Defendants did not pay Plaintiff Bernal Delgado at the promised wage rate for all of his hours worked.

**G.     Travel Deduction (Plaintiff Bernal Delgado)**

72.     In 2008, Defendants deducted the travel costs of another worker from the pay of Plaintiff Bernal Delgado.  Plaintiff Bernal Delgado did not sign a written authorization allowing Defendants to deduct these costs from his wages.

73.     As a result of these travel cost deductions, Defendants did not Pay Plaintiff Bernal Delgado at the promised wage rate for all of his hours worked.

<u>**Fair Labor Standards Act (FLSA) Collective Action Allegations**</u>

74.      The named Plaintiffs seek to bring their claims under the Fair Labor Standards Act on behalf of themselves individually, and all other similarly situated employees of Defendants who worked in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b). ("FLSA Class").  They seek unpaid minimum wages and liquidated damages.

75.     Plaintiffs and the members of the FLSA Class are similarly situated.  Plaintiffs and other FLSA Class members came to work for Defendants as H-2B seafood processors in 2007, 2008, and/or 2009 and continuing thereafter pursuant to visas issued under 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Plaintiffs and FLSA Class members all worked in Defendants' facilities processing seafood.

14

76.     Plaintiffs Serrano Diaz and Valenzuela and the members of the FLSA Class

they seek to represent under 29 U.S.C. § 216(b) were each paid wages less than those required by

29 U.S.C. § 206(a) during the first workweek that they were employed by one or more

Defendants.  All Plaintiffs and FLSA Class members who traveled from Mexico to work in

Defendants' plant processing seafood were required to pay upfront for some or all of their travel,

visa and border crossing expenses, as described in ¶¶ 29-39.  These expenses, which were for the

benefit of Defendants, reduced the wages of Plaintiffs Serrano Diaz and Valenzuela and FLSA

Class members below minimum wage required by the FLSA during the first workweek.

77.     As a result of Defendants' failure to reimburse Plaintiffs and proposed FLSA

Class members for some or all of the costs referred to in ¶¶ 29-39 during the first workweek,

Plaintiffs and members of the proposed FLSA Class were not paid the minimum wage during the

first workweek they were employed.

78.     Plaintiffs Serrano Diaz and Valenzuela also seek to represent a subclass of

workers ("FLSA Subclass") who did not receive the minimum wage during certain pay periods

in which they were employed by the Defendants.  This failure occurred when Defendants made

unlawful deductions from Plaintiffs Serrano Diaz and Valenzuela and the class members' pay,

and/or made charges for rent which exceeded the reasonable cost of that rent.  All Plaintiffs and

other FLSA plaintiff class members who live or lived in defendants' housing paid rent to

defendants.  All Plaintiffs and other FLSA plaintiff class members who used tools or required

supplies in the course of their employment with Defendants had deductions made from their

wages for those tools and/or supplies.  As a result of the deductions from their pay for these

items, Plaintiffs Serrano Diaz and Valenzuela and FLSA Subclass members did not earn the

minimum wage during one or more pay periods in which they were employed by the Defendants.

15

**North Carolina Wage and Hour Act (NCWHA) Class Action Allegations**

79.   The named Plaintiffs also seek to represent a class of persons under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C. Gen. Stat. §§95-25.6, 95-25.22, and 95-25.22(a1) ("NCWHA Class").  The NCWHA Class consists of all non-supervisory workers who were, are and/or shall be jointly or severally employed by Defendants at any time during the two years prior to the filing of this action through the date on which final judgment is entered, who performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to the Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who did not receive their wages when they were due at the promised wage rate.

80.     The NCWHA violations occurred when Defendants failed to reimburse the named Plaintiffs and members of the NCWHA Class for some or all of their transportation, visa, and border-crossing expenses during the first week in which they performed labor for Defendants, as described in ¶¶ 29-39.  As a result of Defendants' failure to reimburse the named Plaintiffs and members of the NCWHA Class, the named Plaintiffs and members of the NCWHA Class were paid less than the promised wage in violation of N.C.G.S. § 95-25.6.

81.     The NCWHA Class includes a subclass that Plaintiffs seek to represent under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C.G.S. §§ 95-25.6 and 95-25.22 ("NCWHA Deductions Subclass"), consisting of all non-supervisory employees of Defendants who were employed by Defendants for any pay period beginning during the two years prior to the filing of this lawsuit and continuing thereafter through the date on which final judgment is entered in this action who did not receive all of their wages when those wages were due under an express, constructive, or implied agreement to pay those wages at those rates for all work performed for the Defendants.   These violations occurred when

16

Defendants made deductions from the weekly wages due the named Plaintiffs and NCWHA Deductions Subclass members for transportation, rent, aprons, boots, and knives when the Plaintiffs and NCWHA Deductions Subclass members had not signed the required written authorizations.

82.     The NCWHA Class also includes a subclass that named Plaintiffs Serrano Diaz and Valenzuela seek to represent under Rule 23(b)(3), Fed.R.Civ.P, for back wages and liquidated damages under N.C.G.S. §§ 95-25.6 and 95-25.22 ("NCWHA Pay Rate Subclass"), consisting of all non-supervisory employees of Defendants who were employed by Defendants for any pay period beginning during the two years prior to the filing of this lawsuit and continuing thereafter through the date on which final judgment is entered in this action who did not receive all of their wages when those wages were due under an express, constructive, or implied agreement to pay those wages at those rates for all work performed for the Defendants. This violation occurred when the Defendants failed to compensate the named Plaintiffs and members of the NCWHA Pay Rate Subclass at or above the promised wage because they were paid a piece rate which resulted in an average wage less than the promised wage, or because they were compensated on an hourly basis at a pay rate below the promised wage.

83.     Joinder of all class members for the proposed NCWHA Class would be impracticable, if not impossible, based in part upon the fact that all of the proposed class members who are former employees of Defendants are migrant workers whose permanent place of residence is in Mexico and who likely do not speak English.  Defendants received H-2B temporary labor certification from the United States Department of Labor for approximately 346 openings in 2007, 2008, 2009, and 2010.  Therefore the NCWHA class could include as many as

17

346 individuals. Upon information and belief, each of the NCWHA subclasses would exceed 100 individuals.

84. The questions of law or fact which are common to the members of the NCWHA Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are: (a) whether the transportation, visa, and border crossing expenses and fees were primarily for the benefit of the employer; (b) whether the Defendants reduced the named Plaintiffs' and NCWHA class members' pay below the promised wage by requiring them to bear the costs identified above and failing to reimburse them for those costs during their first workweek;

85. The questions of law or fact which are common to the members of the NCWHA Deductions Subclass and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are (a) whether the aprons, boots, knives, and transportation costs were primarily for the benefit of the employer; (b) whether the Defendants reduced the named Plaintiffs' and NCWHA class members' pay below the promised wage by deducting the costs of the items listed in (a); (c) whether the Defendants failed to pay wages when due based upon the Defendants' failure to obtain a written authorization from the named Plaintiffs and each NCWHA Deductions Subclass member in the form required by N.C.G.S. §95-25.8, and d) whether the authorization method, if any, used by the Defendants complied with the requirements of N.C.G.S. §95-25.8; (e) whether the rent

86. The questions of law or fact which are common to the members of the NCWHA Pay Rate Subclass and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., is whether the Defendants failed to pay named Plaintiffs Serrano Diaz and Valenzuela and the members of the NCWHA

Pay Rate Subclass all the wages they had agreed to pay when those wages were due for each hour or part of an hour that each such worker was employed by the Defendants, in accordance with N.C.G.S. § 95-25.6 when they paid NCWHA Pay Rate Subclass members less than the promised wage rate for every hour worked in each workweek, by paying the Plaintiffs and Subclass members an hourly rate below the promised wage or by compensating them on a piece rate basis which resulted in wages that were lower than the promised hourly wage.

87.    The named Plaintiffs' claims are typical of the claims of the NCWHA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs claim Defendants failed to reimburse them and NCWHA class members for the costs they incurred for their visas, border crossing fees, and transportation when those costs were primarily for the benefit of the employer, and these costs reduced NCWHA class members' wages during the first workweek below the wages which were promised.

88.    The named Plaintiffs' claims are typical of the claims of the NCWHA Deductions Subclass of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs claim Defendants made weekly wage deductions from the wages due each Plaintiff and NCWHA Deductions Subclass member when these Plaintiffs and Plaintiff class members had not provided any signed written authorization to Defendants in the form required by N.C.G.S. § 95-25.8 authorizing defendants to make any wage deduction from the weekly wages they were due for work-related supplies, and that at times those deductions reduced their wages below the promised wage.  Plaintiffs further claim that Defendants unlawfully charged them for rent which reduced their wages below the promised wage.

89.     The claims of Plaintiffs Serrano Diaz and Valenzuela, who seek to represent the NCWHA Pay Rate Subclass, are typical of the claims of that subclass of persons under Rules

23(a)(3) and 23(b)(3), Fed.R.Civ.P,. in that Plaintiffs Serrano Diaz and Valenzuela claim the Defendants failed to comply with their agreement to pay wages when due to Plaintiffs and the NCWHA Pay Rate Subclass members at the promised rate for work performed for the Defendants by failing to ensure that individuals paid on a piece-rate basis earned at least the promised wage and failing to ensure that the hourly pay rate equaled or exceeded the promised hourly rate.

90.     The named Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Class members.  The named Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Deductions Subclass members. Named Plaintiffs Serrano Diaz and Valenzuela's interests in the claims are in no way antagonistic or adverse to other NCWHA Pay Rate Subclass members.

91.     The named Plaintiffs will fairly and adequately represent the interests of the NCWHA Class and the NCWHA Deductions Subclass.  Named Plaintiffs Serrano Diaz and Valenzuela will fairly and adequately represent the interests of the NCWHA Pay Rate Subclass. The undersigned counsel Carol Brooke and Clermont Fraser are experienced litigators who have been named counsel for many class actions involving similar claims to those raised in this action.

**FIRST CLAIM FOR RELIEF (Fair Labor Standards Act)**

92.     Paragraphs 1 through 91 above are realleged and incorporated by reference by the named Plaintiff and each member of the FLSA Class and Subclass described in ¶¶ 74 and 78 which Plaintiff seeks to represent pursuant to 29 U.S.C. §216(b).

93.     Defendants failed to keep proper records of daily and weekly hours worked by each of Defendants' employees in violation of 29 C.F.R. §516.2(a)(7).

20

94.     Defendants willfully failed to pay Plaintiffs and the members of the FLSA Class and FLSA Subclass at least the required federal minimum wage for each hour or part of an hour that they worked in each workweek, in violation of 29 U.S.C. §206.

95.     Defendants made unlawful wage deductions from Plaintiffs and the members of the FLSA Subclass which resulted in payment of wages at a rate or in an amount less than the minimum wage rates required by the FLSA, in violation of 29 U.S.C. §206(m).

96.     Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the Fair Labor Standards Act and its accompanying regulations.

97.     As a result of Defendants' actions, Plaintiffs and the FLSA Class of similarly situated persons and Subclass defined in ¶¶ 74 and 78 have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF (North Carolina Wage and Hour Act)

98.     Paragraphs 1 through 97 above are realleged and incorporated by reference by the named Plaintiffs and the NCWHA Class and Subclasses defined in ¶¶ 79, 81 and 82 above which the named Plaintiffs seek to represent.

99.     Defendants failed to pay Plaintiffs and the members of the NCWHA Class defined in ¶ 79 above at least the promised wage for each hour or part of an hour that Defendants allowed, suffered, and/or required Plaintiff and the members of the NCWHA Class to work for Defendants for each workweek, in violation of N.C.G.S. § 95-25.6.

100.     Defendants made wage deductions from the wages that were due Plaintiffs and the NCWHA Deductions Class defined in ¶ 81 when Defendants had not obtained the written

authorization required by N.C.G.S. § 95-25.8(a) and/or which were unlawful under N.C.G.S. § 95-25.8(b).

101.    Defendants failed to pay Plaintiffs Serrano Diaz and Valenzuela and the members of the NCWHA Pay Rate Subclass defined in ¶ 82 above at least the promised wage for each hour or part of an hour that Defendants allowed, suffered, and/or required Plaintiff and members of the NCWHA Subclass to work for Defendants for each workweek, in violation of N.C.G.S. § 95-25.6.

102.    As a result of these actions of the Defendants in violation of their rights under N.C.G.S. §§95-25.6 and 95-25.8, Plaintiffs and the NCWHA Class and Subclasses have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

### THIRD CLAIM FOR RELIEF (NCWHA – Plaintiff Bernal Delgado)

103.    Paragraphs 1 through 102 above are realleged and incorporated by reference by Plaintiff Bernal Delgado.

104.    Defendants failed to pay Plaintiff Bernal Delgado at least the promised wage for each hour or part of an hour that Defendants allowed, suffered, and/or required Plaintiff Bernal Delgadoto work for Defendants for each workweek, in violation of N.C.G.S. § 95-25.6.

105.    Defendants made wage deductions from the wages that were due Plaintiff Bernal Delgado when Defendants had not obtained the written authorization required by N.C.G.S. § 95-25.8(a) and/or which were unlawful under N.C.G.S. § 95-25.8(b).

106.    As a result of these actions of the Defendants in violation of his rights under N.C.G.S. §§95-25.6 and 95-25.8, Plaintiff Bernal Delgado has suffered damages in the form of

unpaid wages and liquidated damages that may be recovered from Defendants, jointly and

severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Enter an order finding that this Court has jurisdiction over Plaintiffs' claims;

2. Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the FLSA Class and Subclass defined in ¶¶ 74 and 78 of this Complaint;

3. Certify this action as a class action under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C.G.S. § 95-25.22 with respect to the NCWHA Class and Subclasses defined in ¶¶ 79, 81 and 82;

4. Enter a judgment against Defendants Quality Crab Company, Inc. and William Barclift, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶¶ 74 and 78 of this Complaint for compensatory damages under the First Claim for Relief in an amount equal to the total of the unpaid minimum wages due to the named Plaintiffs and each of those other similarly situated employees of Defendants under 29 U.S.C. § 206(a)(1), plus an equal amount as liquidated damages under 29 U.S.C. § 216(b);

5. Enter judgment against Defendants Quality Crab Company, Inc. and William Barclift, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶¶ 79, 82 and 82 of this Complaint for compensatory damages under the Second Claim for Relief in an amount equal to the total of the unpaid promised wages due to the named Plaintiffs and the NCWHA Class and Subclasses of workers under N.C.G.S. §§ 95-24.22(a), plus an equal

23

additional amount as liquidated damages under N.C.G.S. § 95-25.22(a)(1) plus

interest in the manner and at the rate prescribed in N.C.G.S. § 95-25.22(a);

6. Enter judgment against Defendants Quality Crab Company, Inc. and William Barclift,

jointly and severally, and in favor of Plaintiff Bernal Delgado for compensatory

damages under the Third Claim for Relief in an amount equal to the total of the

unpaid promised wages due to Plaintiff Bernal under N.C.G.S. §§ 95-24.22(a), plus

an equal additional amount as liquidated damages under N.C.G.S. § 95-25.22(a)(1)

plus interest in the manner and at the rate prescribed in N.C.G.S. § 95-25.22(a);

7. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that

Defendants violated the Plaintiffs' rights under the FLSA and the NCWHA and their

implementing rules and regulations.

8. Award Plaintiffs the costs of this action against Defendants Quality Crab Company,

Inc. and William Barclift, jointly and severally;

9. Award Plaintiffs reasonable attorneys' fees under 29 U.S.C. § 216(b), N.C.G.S. § 95-

25.22(d), and N.C.G.S. § 95-243 against Defendants Quality Crab Company, Inc. and

William Barclift, jointly and severally;

10. Award against Defendants Quality Crab Company, Inc. and William Barclift, jointly

and severally, and in favor of the named Plaintiffs and the classes of workers they

seek to represent, prejudgment and post judgment interest as allowed by law; and

11. Grant such other relief as the Court may deem just and proper.


This the 30th day of April, 2010.

Respectfully submitted,

NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC  27611
919-856-2165
919-856-2175 (fax)

BY:
   /s/ Carol L. Brooke
   Carol L. Brooke
   919-856-2144
   carol@ncjustice.org
   Attorney at Law
   NC Bar # 29126

   /s/ Clermont L. Fraser
   Clermont L. Fraser
   919-861-0606
   clermont@ncjustice.org.
   Attorney at Law
   NC Bar # 36761